BOLIN, Judge.
Elzie Rea brought this suit individually and on behalf of his minor son, Clay Rea, against Billy G. Woods and his liability insurer for damages for serious persona! injuries received by the minor in an automobile collision. During the trial below, it was stipulated the amount of recovery would be $15,000 in the event plaintiff was entitled to an award. From a judgment rejecting plaintiff’s demands, he has appealed.
The accident occurred after dark on a relatively straight, hard-surfaced highway. Three vehicles were involved, and all were traveling in the same direction. The lead vehicle, driven by John Meeks, had slowed down preparatory to making a right turn into a T-intersection. Defendant Billy G. Woods, operator of the next car, was following closely behind the Meeks automobile and, after'observing Meeks give the proper signal for a right turn, slowed his vehicle and remained in his right lane to allow the vehicle to negotiate the right turn. While thus driving slowly and waiting for the Meeks car to make the turn, Woods -observed *140 in his rearview mirror the Rea pickup track rapidly approaching from his rear and in the right lane of traffic. Woods continued to watch this vehicle as it came closer to him and, being of the opinion that it was being operated at an excessive rate of speed, he became apprehensive he would be caught in a squeeze between the two vehicles. As the pickup continued to close in on him, and as the Meeks car had not negotiated the right turn sufficiently to clear his lane of traffic, Woods testified he pulled into the left lane to avoid being struck from the rear. Rea testified he had already maneuvered his vehicle into the left lane preparatory to passing both cars but seeing the Woods vehicle pull to the left, he turned back to the right, applied his brakes and skidded 80 to 100 feet into the left rear of the Meeks vehicle as it was in the process of completing the right turn. The investigating officer, who testified to the skid marks, said the Rea truck continued 120 feet down the road into the ditch and turned over. It is not disputed that Rea never at any time sounded his horn to signify his intention to make this passing maneuver. The Woods vehicle was never in contact with either of the other two.
All three boys in the Rea truck testified that Clay pulled out to pass the Woods vehicle when he was not more than three car lengths behind it, at which time he was driving approximately 45 m. p. h. This substantiates Woods’ testimony that the Rea track was approaching so rapidly and had come so near him that he feared he would be crashed and as a consequence of this turned out of the right lane to avoid such an accident. Further testimony is to the effect that Woods was driving slowly and his brake lights flashed on just before he turned out.
Clay Rea contends he was executing a normal passing maneuver when Woods abruptly drove his car from the right into the left lane without any warning thus creating an emergency causing him to suddenly apply his brakes and ultimately collide with the Meeks car. Defendant driver, on the other hand, contends the accident was caused solely by the negligence of Clay Rea in operating his vehicle at an excessive rate of speed, failing to keep a proper lookout and attempting to overtake and pass him on the left without sounding his horn or otherwise indicating such a passing maneuver; and alternatively interposed a special plea of contributory negligence based on the same charges.
There are numerous acts of negligence charged to plaintiff driver and our review of the record convinces us, as it did the trial judge, that Rea was negligent in driving his vehicle too rapidly to properly control it under the conditions which confronted him; in failing to observe the Meeks vehicle preceding the Woods vehicle and failing to sound his horn indicating his intention to pass either of the vehicles proceeding in his same direction. The lower court, therefore, concluded that even if Woods pulled his vehicle slightly into his left lane, he did so in the face of an emergency created by Rea’s negligence and, therefore, defendant was free of negligence.
It is an undisputed fact that Clay Rea failed to sound his horn indicating his intention to pass either of the vehicles proceeding in his same direction.
LSA-R.S. 32:233, (B) provides:
“The driver of an overtaking vehicle shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction.”
While it may be argued that under some circumstances the failure of the overtaking and passing motorist to sound his horn does not constitute actionable negligence, our jurisprudence does hold the statute in question should be construed so as to give it meaning. McCallum v. Adkerson (La.App. 2 Cir., 1961) 126 So.2d 835. In the instant case, Woods found himself in an emergency created, at least in part, by the excessive speed of the overtaking motor *141 ist, and if such overtaking motorist had complied with the statute and sounded his horn, Woods could and would have remained in his right lane and avoided the accident. In fact, Woods testified, and there is no reason to discount such testimony, that if he had realized Rea was going to get into the left lane and not run into the rear of his vehicle, he would have stopped behind Meeks and would not have pulled his car into the left lane.
Having concluded that Clay Rea’s negligence contributed to the accident, the alternative plea of contributory negligence is sustained, and the judgment is affirmed at appellant’s cost.
Affirmed.